**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**ISAAC HALL,**

                **Plaintiff,**

       **v.**                              **CASE NO.  08-3235-SAC**

**CLAUDE CHESTER,**
**et al.,**

                **Defendants.**

**O R D E R**

This civil complaint was filed pursuant to 28 U.S.C. § 1331 by an inmate of the United States Penitentiary, Leavenworth, Kansas (USPL).  Plaintiff has also filed an Application to Proceed Without Prepayment of Fees.  Having examined the materials filed, the court finds as follows.

**FACTUAL BACKGROUND AND CLAIMS**

Plaintiff brings this action against the United States of America; Claude Chester, Warden USPL; and Ms. McKee referred to as "the record staff" at the USPL.  As the factual basis for his complaint, Mr. Hall alleges that on June 30, 2008, and July 11, 2008, he received letters from his attorney that were clearly marked as legal mail to be opened only in the presence of the inmate, and that the two letters were opened outside his presence.  He also complains that the letters "were not delivered by the designated counselor."  Plaintiff asserts this was a violation of a BOP program statement and attorney-client privilege as well as the First, Fourth, and Fourteenth Amendments.  He claims that defendant McKee instructed staff in the mail room to open legal mail if they wanted,

defendant Chester "allowed this action to continue," and the United States is "responsible for the actions" of defendants Chester and McKee.

Plaintiff seeks injunctive relief in the form of an order requiring defendants to treat legal mail in accord with "the BOP program statement" by opening it only in the presence of the inmate and having it delivered to the inmate by the designated counselor[1]. He also seeks money damages for "deliberate indifference," negligence, and pain and suffering, as well as for violation of the BOP program statement and his asserted constitutional rights.

**APPLICATION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF FEES**

Plaintiff has filed a motion for leave to proceed in forma pauperis (Doc. 2), and has attached an Inmate Account Statement in support as statutorily mandated. Section 1915(b)(1) of 28 U.S.C., requires the court to assess an initial partial filing fee of twenty percent of the greater of the average monthly deposits or average monthly balance in the prisoner's account for the six months immediately preceding the date of filing of a civil action. Having examined the records of plaintiff's account, the court finds the average monthly deposit to plaintiff's account is $103.50, and the

---

[1] Plaintiff does not cite, and the court does not find a provision requiring that incoming special mail be delivered by "the designated counselor." 28 C.F.R. § 540.19(a) provides the following with regard to delivery: (a) Staff shall mark each envelope of incoming legal mail (mail from courts or attorneys) to show the date and time of receipt, the date and time the letter is delivered to an inmate and opened in the inmate's presence, and the name of the staff member who delivered the letter. The inmate may be asked to sign as receiving the incoming legal mail. This paragraph applies only if the sender has marked the envelope as specified in § 540.18. Subsection (b) of § 540.19 provides: The inmate is responsible for advising any attorney that correspondence will be handled as special mail only if the envelope is marked with the attorney's name and an indication that the person is an attorney, and the front of the envelope is marked "Special Mail--Open only in the presence of the inmate".

2

average monthly balance is $7.37. The court therefore assesses an initial partial filing fee of $20.50, twenty percent of the average monthly deposit, rounded to the lower half dollar[2]. Plaintiff must pay this initial partial filing fee before this action may proceed further, and will be given time to submit the fee to this court. His failure to submit the initial fee in the time allotted may result in dismissal of this action without further notice.

**SCREENING**

Because Mr. Hall is a prisoner, the court is required by statute to screen his complaint and to dismiss the complaint or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A(a) and (b). Having screened all materials filed, the court finds the complaint is deficient in several respects. Plaintiff will be given time to cure the deficiencies discussed herein by filing either a Supplement or an Amended Complaint.[3]

**FEDERAL TORT CLAIM**

A claim for money damages against the United States based upon the alleged negligence of federal prison officials must be brought

---

[2] Pursuant to 28 U.S.C. § 1915(b)(1), plaintiff will remain obligated to pay the remainder of the full $350.00 district court filing fee in this civil action. Being granted leave to proceed in forma pauperis entitles him to pay the filing fee over time through payments deducted automatically from his inmate trust fund account as authorized by 28 U.S.C. § 1915(b)(2).

[3] If plaintiff files a Supplement, the content will be considered together with his original complaint. If he files an Amended Complaint, the original complaint is completely superceded and no longer considered, and the Amended Complaint is considered by itself.

3

under the Federal Tort Claims Act (FTCA)[4]. Congress has provided a cause of action against the United States under the FTCA for injury caused by the negligent or wrongful act or omission of any employee of a federal agency acting in his or her official capacity. 28 U.S.C. § 2672; United States v. Orleans, 425 U.S. 807, 813 (1976)("The Federal Tort Claims Act is a limited waiver of sovereign immunity, making the Federal Government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment."); see 28 U.S.C. § 1346(b).

If, as appears possible, plaintiff's intent in filing this action was to follow-up on the denial of his administrative tort claim, it should have been styled as a complaint under the FTCA[5] with the United States named as the only defendant. Because the FTCA constitutes a waiver of the Government's sovereign immunity, the conditions established by the FTCA are strictly construed. See Pipkin v. U. S. Postal Serv., 951 F.2d 272, 275 (10th Cir. 1991); Bradley v. United States, 951 F.2d 268, 270 (10th Cir. 1991); see also Franklin Savings Corp., In re, 385 F.3d 1279, 1287 (10th Cir. 2004), cert. denied, 546 U.S. 814 (2005). The FTCA requirements are jurisdictional and cannot be waived. See Estate of Trentadue ex rel. Aguilar v. U.S., 397 F.3d 840, 852 (10th Cir. 2005); Industrial Constructors Corp. v. U.S. Bureau of Reclamation, 15 F.3d 963, 967 (10th Cir. 1994). The requirements include that the only proper defendant is the United States, and the damages may not exceed the

---

[4] The provisions of the FTCA are found in Title 28 of the United States Code. 28 U.S.C. § 1346(b), § 1402(b), § 2401(b), and §§ 2671-2680.

[5] Plaintiff alleges that he submitted a "tort claim with the United States," which was denied on August 18, 2008. However, he does not bring this action under the FTCA.

amount that was actually requested in plaintiff's administrative tort claim. If plaintiff intended, or hereafter decides, to bring this action under the FTCA, he must file an Amended Complaint citing the FTCA and naming the United States as the sole defendant[6].

**FAILURE TO STATE A FEDERAL CONSTITUTIONAL VIOLATION**

If, on the other hand, plaintiff purposefully styled this complaint under § 1331 only[7], rather than the FTCA, his complaint is deficient in the following respects. A suit for damages against the United States is barred by sovereign immunity unless such immunity has been waived. The United States has not waived its sovereign immunity for federal civil rights complaints, which are generally considered as brought under Bivens.[8] Elrod, 478 F.Supp.2d at 1270. It follows that the defendant United States is subject to being dismissed from this action based upon sovereign immunity, unless the complaint is amended to an FTCA complaint.

Plaintiff's claims for money damages against defendants Chester and McKee in their "official capacities" are also subject to being

---

[6] The amount in controversy is initially determined based upon the amount of damages claimed in the complaint. However, in an FTCA suit, the amount recoverable is limited to that in the tort claim.

[7] Plaintiff expressly styles his complaint as one under 28 U.S.C. § 1331.

[8] The Supreme Court fashioned a limited remedy for civil rights violations by federal actors in Bivens, where it held that "plaintiffs may sue federal officials in their individual capacities for damages for Fourth Amendment violations, even in the absence of an express statutory cause of action analogous to 42 U.S.C. § 1983." Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 395-97 (1971). However, the cause of action created by the Supreme Court in Bivens against persons acting under color of federal law is generally viewed as less extensive than the remedy created by Congress in 42 U.S.C. § 1983 against persons acting under color of "state" law. Courts since Bivens have often characterized claims against federal officials under the Fourth Amendment and a few other constitutional provisions as Bivens claims. See, e.g., Carlson v. Green, 446 U.S. 14, 18 (1980)(Eighth Amendment violations); Elrod v. Swanson, 478 F.Supp.2d 1252, 1269 (D.Kan. 2007).

dismissed based on immunity. A <u>Bivens</u> claim for money damages simply may not be brought against a federal official in his official capacity. This is because "any action that charges such an official with wrongdoing while operating in his or her official capacity as a United States agent operates as a claim against the United States." <u>Simmat v. United States Bureau of Prisons</u>, 413 F.3d 1225, 1231 (10th Cir. 2005), *citing* <u>Farmer v. Perrill</u>, 275 F.3d 958, 963 (10th Cir.2001), *citing* <u>Weaver v. United States</u>, 98 F.3d 518, 520 (10th Cir. 1996); <u>Atkinson v. O'Neill</u>, 867 F.2d 589, 590 (10th Cir. 1989). And, as already noted, a <u>Bivens</u>-type suit against the United States is barred by sovereign immunity. In <u>Farmer v. Perrill</u>, the Tenth Circuit explained that "an official-capacity suit contradicts the very nature of a <u>Bivens</u> action," and "[t]here is no such animal as a <u>Bivens</u> suit against a public official tortfeasor in his or her official capacity." <u>Farmer</u>, 275 F.3d at 963; <u>see</u> <u>also</u> <u>Simmat</u>, 413 F.3d at 1231; <u>Steele v. Fed. Bureau of Prisons</u>, 355 F.3d 1204, 1214 (10th Cir. 2003)(A <u>Bivens</u> claim cannot be brought against defendants in their official capacities.), <u>cert</u>. <u>denied</u>, 543 U.S. 925 (2004), *abrogated on other grounds by* <u>Jones v. Bock</u>, 549 U.S. 199 (2007).

Sovereign immunity is not a bar to plaintiff's claims against defendants Chester and McKee in their "individual capacities" for damages or injunctive relief. <u>Simmat</u>, 413 F.3d at 1233, *citing* 5 U.S.C. 702 and <u>Chamber of Commerce of U.S. v. Reich</u>, 74 F.3d 1322, 1329 (D.C. Cir. 1996). Claims that rights under the First, Fourth and Fourteenth Amendments have been violated clearly give rise to jurisdiction under 28 U.S.C. § 1331, since § 1331 provides "federal question" jurisdiction over civil actions "arising under the Constitution, laws, or treaties of the United States." However, as

6

the Tenth Circuit has explained:

> [J]urisdiction is not enough. To bring suit, a plaintiff must also state a claim upon which relief may be granted, what used to be called stating a cause of action. See e.g., Lake Country Estates, Inc. v. Tahoe Regional Planning Agency, 440 U.S. 391, 398, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979)(distinguishing "the cause-of-action argument," which is directed at "the existence of a remedy," from jurisdictional questions).

Simmat, 413 F.3d at 1231. Plaintiff's money damages claims against Chester and McKee in their individual capacities based upon alleged constitutional rights violations are subject to being dismissed for failure to allege sufficient facts in support to state a cause of action. In order for a remedy to exist under 28 U.S.C. § 1331 "[a] federal constitutional question must exist 'not in mere form, but in substance, and not in mere assertion, but in essence and effect'." Smith v. Plati, 258 F.3d 1167 (10th Cir. 2001)(citation omitted), cert. denied, 537 U.S. 823 (2002).

In the instant complaint, plaintiff's allegations of constitutional violations are nothing more than conclusory assertions. Generally, courts have long held that the inadvertent, negligent mishandling of an inmate's mail does not violate the Constitution. Simkins v. Bruce, 406 F.3d 1239, 1242 (10th Cir. 2005)(When access to the courts is impeded by mere negligence, as when legal mail is inadvertently lost or misdirected, no constitutional violation occurs.); Bryant v. Winston, 750 F.Supp. 733 (E.D.Va. 1990); Bruscino v. Carlson, 654 F.Supp. 609 (S.D.Ill. 1987), aff'd, 854 F.2d 162 (7th Cir. 1988), cert. denied, 491 U.S. 907 (1989). On the other hand, courts have "not hesitated to find a violation" where a policy of opening mail outside inmates' presence has been shown. See e.g. Kalka v. Megathlin, 10 F.Supp.2d

7

1117, 1123 (D.Ariz. 1998)("[A]n occasional opening of legal mail outside the inmate's presence does not rise to the level of a violation, though a policy of doing so is a violation."), aff'd 188 F.3d 513 (9th Cir. 1999); Bieregu v. Reno, 59 F.3d 1445, 1452 (3rd Cir. 1995)(prison's "pattern and practice" of opening confidential legal mail outside of inmate's presence infringes upon inmate's First Amendment rights and access to the courts), *implied overruling on other grounds recognized in* Oliver v. Fauver, 118 F.3d 175 (3rd Cir. 1997); Muhammad v. Pitcher, 35 F.3d 1081 (6th Cir. 1994). The Tenth Circuit Court of Appeals and other circuits have specifically held that an isolated incident of opening legal mail outside of the inmate's presence, does not violate the Constitution. See Smith v. Maschner, 899 F.2d 940, 944 (10th Cir. 1990); Brewer v. Wilkinson, 3 F.3d 816, 825 (5th Cir. 1993), cert. denied, 510 U.S. 1123 (1994); Gardner v. Howard, 109 F.3d 427, 431 (8th Cir. 1997)(isolated, single instance of opening incoming confidential legal mail does not support a constitutional claim). In Maschner, 899 F.2d at 943-44, prison officials accidentally opened one piece of protected legal mail without the inmate present. The Tenth Circuit held that "[s]uch an isolated incident, without any evidence of improper motive or resulting interference with [the inmate's] right . . . of access to the courts, does not give rise to a constitutional violation." Id. at 944.

While plaintiff makes the conclusory allegation that defendants acted intentionally, he alleges no facts to support an inference that the two incidents upon which his complaint is based were the product of improper motive rather than inadvertence or negligence. Nor has he alleged facts, rather than conclusions, which if proven

8

would demonstrate that defendants engaged in a pattern or practice of opening inmates' legal mail outside their presence[9].

Plaintiff also fails to allege sufficient facts indicating he is entitled to injunctive relief. A party cannot maintain an action for injunctive relief unless a substantial likelihood of being injured in the future is demonstrated. Facio v. Jones, 929 F.2d 541, 544 (10th Cir. 1991); City of Los Angeles v. Lyons, 461 U.S. 95, 103 (1983)("[P]ast wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy."). Since plaintiff alleges no facts establishing a pattern or practice, and the policy in the BOP Program Statement is to open properly marked legal mail only in the presence of the inmate, he does not demonstrate a substantial likelihood of future injury.

Plaintiff does not allege that his legal mail was read, delayed, damaged, or lost. Nor does he assert that its opening actually interfered with his communications with counsel or his access to the courts. Instead, plaintiff is asking this court to find a federal constitutional violation based upon the accepted factual allegations that two of his legal letters were opened outside his presence. The court finds two incidents of improperly opened mail, without more, fail to state a constitutional claim under the holding that isolated incidents, without any evidence of improper motive or resulting interference with an inmate's right to counsel or court access, do not give rise to a constitutional

---

[9] Mr. Hall alleges no facts indicating that his legal mail is routinely opened outside his presence. His statement that defendant McKee told mail room staff to open any legal mail they wanted is completely conclusory, and as such does not amount to facts establishing a pattern or practice.

9

violation.  Maschner, 899 F.2d at 944.  Thus, while this court does not condone the negligent opening of an inmate's legal mail, it is compelled to conclude that such action does not state a federal constitutional violation so as to give rise to a claim under 28 U.S.C. § 1331.

**FAILURE TO STATE CLAIM OF VIOLATION OF FIRST AMENDMENT**

Plaintiff specifically asserts that the opening of his legal mail violated the First Amendment, but makes no attempt to explain how the alleged acts violated this constitutional provision. Inmates have a First Amendment right both to send and receive mail.[10] However, that right does not preclude prison officials from examining mail for security purposes.  Wolff v. McDonnell, 418 U.S. 539, 576 (1974); Rowe v. Shake, 196 F.3d 778, 782 (7th Cir. 1999). If plaintiff is asserting that defendants denied his First Amendment right to free speech, the facts alleged do not support such an assertion.  He does not allege that defendants censored or refused to deliver his mail.  Nor does he allege facts indicating these incidents sufficiently chilled, inhibited, or interfered with his ability to speak, protest, or complain openly to his attorney.[11]

---

[10] The First Amendment prohibits the abridgement of the freedom of speech.  U.S. Const. amend. I.  Mail is one medium of free speech, and the right to send and receive mail exists under the First Amendment.  See City of Cincinnati v. Discovery Network, Inc., 507 U.S. 410, 427 (1993)("A prohibition on the use of the mails is a significant restriction of First Amendment rights.").

[11] The Third Circuit has held that a prison's practice of opening attorney mail, "interferes with protected communications, strips those protected communications of their confidentiality, and accordingly impinges upon the inmate's right to freedom of speech."  Jones v. Brown, 461 F.3d 353, 359 (3rd Cir. 2006).  The Eleventh Circuit has similarly found a "free speech right to communicate with [one's] attorneys by mail, separate and apart from his constitutional right to access the courts."  Al-Amin v. Smith, 511 F.3d 1317, 1334 (11th Cir. 2008).
  The discussion of the other side of this issue in West v. Endicott, 2008 WL 906225, *4-*6 (E.D. Wis. Mar. 31, 2008) is cited for its persuasive reasoning:

Consequently, his claims do not appear to be grounded in those "typical First Amendment considerations" that "protect the flow" of ideas and freedom of speech.  See Walker v. Navarro County Jail, 4 F.3d 410 (5th Cir. 1993)(Inmate's allegation that legal mail was opened and read but not censored does not rise to level of constitutional violation).

---

> [I]t is difficult to discern why (some) courts consider the confidentiality of legal mail as an "end in itself" entitled to independent First Amendment protection rather than simply as a means of accessing the courts.  Recall that the legal mail is not being censored, delayed or destroyed; indeed, it does not even appear that it is being read--it is merely being opened. As such, in a case like this, there is no disruption in the content or message of any communications.  It is not the message contained in legal mail that is curbed, but the confidentiality of that mail: the violation is one of secrecy rather than substance.  Secrecy is not "speech," of course, but it is really only that secrecy that the Third and Eleventh Circuits are protecting as an "end in itself."  Because secrecy itself is not communicative expression entitled to First Amendment protection, the only way to view it is as a means or instrumentality.  But an instrumentality of what?  Protecting the secrecy of legal mail does not aid inmates in expressing political views, writing poetry or complaining about prison conditions, because they could just as easily write about such complaints in non-legal mail . . . which could duly be opened by the prison. . . .  [T]he veil of secrecy that protects legal mail does not protect the content of any "speech" occurring outside of the legal context--no important political ideas or religious opinions are affected by a protection for legal mail.  Obviously, then, the only purpose secrecy serves in the legal mail context is that it allows inmates to communicate more freely with their attorneys, which of course was the genesis of courts' heightened protections for legal mail in the first place.  As such, to the extent the secrecy of legal mail is worth protecting, it is only to the extent it is instrumental in receiving sound legal advice, which ensures uninhibited access to the courts.
>
> * * *
>
> Based on the above, I conclude that when the allegation is merely that legal mail was improperly opened--rather than destroyed or delayed--the right is only actionable in this circuit to the extent the violation inhibits the inmate's ability to access the courts; the right to receive unopened legal mail is not, in other words, entitled to independent First Amendment protection.

Id. (footnotes omitted); see also Vasquez v. Raemisch, 480 F.Supp.2d 1120, 1140 (W.D.Wis. 2007).  Even if Jones is correct that an independent First Amendment right exists in the legal mail context, that case is distinguishable because it involved a challenge to a prison-wide policy rather than two isolated instances of mail opening.

11

**FAILURE TO STATE CLAIM OF DENIAL OF ACCESS**

A claim of interference with an inmate's legal mail is normally analyzed under the First Amendment as a claim of denial of access to the courts.[12]  See Al-Amin, 511 F.3d at 1331 (Claims like plaintiff's "have a footing" in an inmate's right to access the courts, "the theory being that an inmate's ability to prosecute or defend litigation might be adversely affected if his legal mail were subject to opening by others."); Wolff, 418 U.S. at 576; see also Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 741 (1983)("the right of access to the courts is an aspect of the First Amendment right to petition").  The Supreme Court has held that "in order to assert a claim arising from the denial of meaningful access to the courts, an inmate must first establish an actual injury." Lewis, 518 U.S. at 349; Simkins, 406 F.3d at 1243-44; Al-Amin, 511 F.3d at 1332-33; Johnson v. Hamilton, 452 F.3d 967, 974 (8th Cir. 2006)(To succeed on a claim for denial of access to legal materials, counsel, or the courts, a plaintiff must prove that he suffered an actual injury or prejudice as a result of the alleged denial of access.).  Thus, a plaintiff must allege that defendants' acts in some manner hindered or impeded the plaintiff's efforts to pursue a legal claim, causing him "actual injury."  Lewis, 518 U.S. at 348. More specifically, he must identify how interference with his legal mail compromised a non-frivolous action, such as having resulted in a denial or dismissal of a direct appeal, habeas petition, or civil rights action.  Id.; Simkins, 406 F.3d at 1243.

---

[12] Defendants are federal officials, so plaintiff's citation to the Fourteenth Amendment is misplaced.  If his claim is grounded in the Due Process Clause, his right of access claim arises under the Fifth Amendment.

Plaintiff does not even assert that the opening of his legal mail violated his right of access. Nor does he allege facts suggesting any actual injury to his right of access from the opening of his two legal letters.[13] The Court "will not supply additional facts, nor will [it] construct a legal theory for plaintiff that assumes facts that have not been pleaded." See Dunn v. White, 880 F.2d 1188, 1197 (10th Cir. 1989), cert. denied, 493 U.S. 1059 (1990)(summary judgment). Conclusory allegations of injury will not suffice. Wardell v. Duncan, 470 F.3d 954, 959 (10th Cir. 2006); Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991); Johnson, 452 F.3d at 974. Mr. Hall shall be given time to show cause why this action should not be dismissed for failure to allege actual injury and thereby state a claim of denial of access.

**FAILURE TO STATE CLAIM OF INTERFERENCE WITH COUNSEL**

Plaintiff asserts that the attorney/client privilege was violated. The Sixth Amendment affords a prisoner the right to counsel, including "meaningful access to his attorney" for a prisoner's direct appeal of his criminal conviction. See Sallier v. Brooks, 343 F.3d 868 (6th Cir. 2003). The latter includes an inmate's right to privately discuss his case with counsel. See Geder v. United States, 425 U.S. 80 (1976). Plaintiff alleges no facts indicating that the opening of his special mail on the two

---

[13] For example, in Simkins, 406 F.3d at 1243, the prison withheld an inmate's legal mail altogether, including a summary judgment motion filed in a civil action, and the delay adversely impacted his civil action. The Tenth Circuit found injury, concluding that "the prejudice from the interference with plaintiff's legal mail is directly and inextricably tied to the adverse disposition of his underlying case and the loss of his right to appeal from that disposition." Id. at 1244.

13

particular occasions interfered with his right to consult with his attorney in a criminal or any other case.  Furthermore, he does not allege that ineffective assistance of counsel resulted or that he was prejudiced in a court case.  See <u>Strickland v. Washington</u>, 466 U.S. 668, 693 (1984).

**FAILURE TO STATE FOURTH AMENDMENT VIOLATION**

For obvious reasons, a prison inmate's Fourth Amendment rights are extremely limited.  Prison officials do not violate an inmate's Fourth Amendment rights by inspecting the inmate's legal mail, and are not required to have probable cause to search incoming mail. <u>See</u> <u>Wolff</u>, 418 U.S. at 576-77.  Plaintiff alleges no facts whatsoever indicating that any inspection of his incoming mail amounted to an unreasonable search under the Fourth Amendment.

**VIOLATION OF PRISON REGULATION**

Plaintiff also seeks relief in this action based on his claim that the actions of defendants in opening his legal mail outside his presence violated a Bureau of Prisons regulation.  He does not refer to a specific BOP regulation in his complaint.  28 C.F.R. § 540.18 governs "Special mail," which includes legal mail, and provides that incoming special mail shall only be opened:

> in the presence of the inmate for inspection for physical contraband and the qualification of any enclosures as special mail.  The correspondence may not be read or copied if the sender is adequately identified on the envelope, and the front of the envelope is marked "Special Mail--Open only in the presence of the inmate."

<u>Id</u>.  In the absence of the required identification, the staff may treat the mail as general correspondence and may open, inspect, and

14

read the mail.  28 C.F.R. § 540.18(b).

For purposes of screening the complaint, the court assumes plaintiff's incoming legal mail at the USPL is subject to the foregoing provisions, and accepts as true plaintiff's allegations that he received two legal letters which were properly identified as special mail, but opened outside his presence in violation of this regulation.  Even accepting these matters as true, the court finds no federal constitutional claim is stated.  The violation of a prison administrative regulation, without more, does not amount to a federal constitutional violation.  Hovater v. Robinson, 1 F.3d 1063, 1068 FN4 (10th Cir. 1993); Phillips v. Norris, 320 F.3d 844, 847 (8th Cir. 2003)(A prisoner has no federal constitutional liberty interest in having prison officials follow prison regulations); see Sandin v. Conner, 515 U.S. 472 (1995); Myers v. Klevenhagen, 97 F.3d 91, 94 (5th cir. 1996); Arcoren v. Peters, 829 F.2d 671, 676 (8th Cir. 1987), ("A Bivens action "must be founded upon a violation of constitutional rights," and "a failure to adhere to administrative regulations does not equate to a constitutional violation."), cert. denied, 485 U.S. 987 (1988).

**PERSONAL PARTICIPATION OF CHESTER NOT ALLEGED**

Finally, the court notes that plaintiff's allegations against defendant Chester do not include the "necessary direct, personal participation required to establish Bivens liability."  See Kite v. Kelley, 546 F.2d 334, 338 (10th Cir. 1976).  Instead, plaintiff makes the conclusory statement that Warden Chester has "allowed" the actions of defendant McKee to continue.  This conclusory statement does not show personal participation by defendant Chester in the

15

opening of plaintiff's legal mail.  Warden Chester may not be held liable for money damages based only upon his supervisory capacity over defendant McKee and others at the USPL.

**PLAINTIFF GIVEN TIME TO AMEND OR SUPPLEMENT**

Plaintiff shall be given time to cure the deficiencies in his complaint.  He may do so by filing an Amended Complaint under the FTCA seeking damages for the negligent opening of his legal mail naming the United States as the sole defendant[14]; or by filing an amendment or supplement to his complaint under § 1331 and Bivens stating sufficient facts to support a claim of federal constitutional violation as well as to support his claims for money damages against the individual defendants and for injunctive relief.  If plaintiff persists in pursuing this action under § 1331 and Bivens only, he must also allege additional facts showing the personal participation of both individual defendants in the actual opening of his legal mail.  If plaintiff fails to cure the deficiencies in his complaint in the time allotted by the court, this action, or portions of it, may be dismissed without further notice.

**IT IS THEREFORE ORDERED** that plaintiff is granted thirty (30) days in which to submit to the court an initial partial filing fee of $ 20.50.  Any objection to this order must be filed on or before the date payment is due.  The failure to pay the fee as required herein may result in dismissal of this action without prejudice.

---

[14] The court reiterates that this is the way plaintiff should proceed if his intent is to file a civil action as a follow-up to the denial of his administrative tort claim under the FTCA.

16

**IT IS FURTHER ORDERED** that within the same thirty (30) days plaintiff must cure the deficiencies in his complaint by either filing a "Supplement to his Complaint" or an "Amended Complaint," or this action may be dismissed for reasons stated herein.

The clerk is directed to transmit a copy of this order to the financial officer at the institution where plaintiff is currently confined.

**IT IS SO ORDERED**.

Dated this 20th day of October, 2008, at Topeka, Kansas.

s/Sam A. Crow
U. S. Senior District Judge